## In re WRAGG.

District Court, N. D. Alabamà, M. D.
Aug. 5, 1940.

Walter J. Knabe, of Montgomery, Ala., for farm debtor.

Steiner, Crum & Weil, of Montgomery, Ala., for Federal Land Bank.

MURPHREE, District Judge.

The petitioner on the 15th day of October, 1934, purchased the farm involved in this case from the Federal Land Bank of New Orleans, executing her mortgage in part payment of the purchase price. The mortgage falling in default, the Federal Land Bank filed a bill in equity to foreclose the mortgage on February 4th, 1937. After this proceeding had been pending for some months, petitioner, to avoid a decree of foreclosure thereon, filed her petition for relief under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, and obtained a stay of foreclosure proceedings. The case was duly referred to a conciliation commissioner who reported that petitioner's proposal "does not include an equitable and feasible method of liquidating the claim of the secured creditor * * *", and recommended that same be rejected.

On January 4th, 1938, the court confirmed the report and recommendation of the conciliation commissioner, and made an order dismissing the petition and holding that petitioner was entitled to become a voluntary bankrupt under the General Bankruptcy Law. The order of dismissal becoming final fifteen days after date, the Federal Land Bank proceeded to revive and pursue the foreclosure proceedings in the equity court to a foreclosure decree and sale by a special master.

More than two years later, viz, March 11th, 1940, petitioner, relying on Section 2, subdivision a(8), of the Chandler Act, 11 U.S.C.A. § 11, sub. a(8), conferring upon courts of bankruptcy the broad power to "close * * *; and reopen estates for cause shown", filed this petition praying that the original proceedings under Section 75 be reopened and revived and that she be granted the benefits of the Frazier-Lemke Act. The Federal Land Bank resists this petition on the ground that after the order of dismissal, it foreclosed the mortgage and re-sold the property to another party. It further urges that the bankruptcy court has lost its jurisdiction because of the decree of dismissal and that petitioner herself is guilty of laches and is now estopped from asserting any rights under the farm-debtor proceedings.

Petitioner conceives that under the decision of the Supreme Court in the case of John Hancock Mutual Life Insurance Company v. Bartels, 308 U.S. 180, 60 S. Ct. 221, 84 L.Ed. 176, upon the failure to

work out a composition with her creditors, she had a right to be adjudicated a bankrupt under subdivision s of Section 75, and that she was entitled after such adjudication as a matter of right to all the benefits thereunder, including "a stay of all proceedings * * * for a period of three years". Undoubtedly the Bartels case so holds, but the question now raised does not involve the correctness vel non of the order of dismissal of January 4th, 1938. The order of January 4th, 1938, specifically omits any ruling on the question of whether the debtor is a "farmer" or not within the meaning of the law. There is no adjudication by that order on petitioner's status as a "farmer", and in view of what is said hereafter, it is unnecessary to decide this question in order to make a proper disposition of the case.

■ Apparently, the petitioner bases her right to re-instatement in part, at least, on the provision of Section 75, sub. s, requiring all cases dismissed because of the first act being held unconstitutional, to be re-instated. The answer to this contention is that this case was not dismissed for that reason. We have found no other mandatory provision relating to re-instatement.

■ The right of courts of bankruptcy to re-open and re-instate cases closed improvidently or before a full administration thereof has long been recognized and practiced. There are three essential elements on which such orders must be based. There must be a seasonable and diligent application. There must be good cause existing justifying the re-opening of the case in the sound discretion of the Court. The Court must be satisfied that no intervening rights have vested which it would be inequitable and unjust to disturb. Wayne United Gas Company v. Owens-Illinois Glass Company, 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557.

Petitioner does not set forth or offer any new or changed condition or proposal except as she avers: "Your petitioner avers that under the changed conditions and interpretations of the said Act that she is entitled to have relief under the provisions of Section 75 of the Bankruptcy Act; that she will be able to receive and obtain such relief either by making and obtaining acceptance of a proposal to her creditors and that she if she fails in this she will be able to obtain relief under the supervised debt extensions authorized by Section 75."

■ The court is of the opinion that petitioner has not met the requirements laid down by Wayne United Gas Company v. Owens-Illinois Glass Company, supra; and that her petition should, therefore, be dismissed.

A consideration of the following cases lends further support to this view:

It was held in the case of Leinweber v. Federal Land Bank, post, that under the mandatory re-instatement provisions of the Second Frazier-Lemke Act, petitioners were required to act *promptly*. Where the proceedings were dismissed on June 28th, 1935, on the ground of unconstitutionality and the petitioner delayed until April 3rd, 1937, to file his application for re-instatement, the court refused to reopen the case.

"The petitioner has failed to bring his case within the amendment of August 28, 1935, which permitted him to petition for reinstatement of his application only in case he acted *promptly*. The statute provides that 'all cases that have been dismissed * * * shall be promptly reinstated * * *.' While this command is directed to the court rather than to the debtor or petitioning creditors, it is obvious that a court can make no such adjudication against the debtor's objection. The court may only act upon the application of a suitor (either debtor or petitioning creditors). Hence, we conclude that the word '*prompt*' applies to the court and to the debtor in voluntary proceedings. A debtor who inexcusably delays will defeat his right to relief. Stronger is the case where the facts which establish laches also make out an estoppel." Leinweber v. Federal Land Bank of St. Louis, Mo., 7 Cir., 95 F.2d 240, 241.

It was held in Massey v. Farmers & Merchants National Bank & Trust Company, 4 Cir., 94 F.2d 526, 531, that a case should not be reopened where it appears the debtor is beyond all reasonable hope of financial rehabilitation and the proceedings can have no effect beyond postponing inevitable liquidation, and the proceedings should be halted at the outset.

It appears that in the case at bar, the rights of third parties have intervened, and that the equity court has acted at a time when it had full jurisdiction and full right to proceed. In the case of In re Miller (Miller v. Hatfield), 6 Cir., 111 F.2d 28, 32, 42 A.B.R.,N.S., 414, the court said:

"The question for decision is whether the orders of September 27 and November 8, 1937, are of such finality as to prohibit the

375

Conciliation Commissioner from granting a rehearing. There is some conflict of opinion in regard to the power of a referee in bankruptcy over his own orders, but we believe the correct rule as applied to farmer-debtor proceedings is that the Conciliation Commissioner has the same power to vacate his order as has a court during the term and as the bankruptcy court has no term, the Conciliation Commissioner has the power to vacate any order entered during the course of the proceedings *unless rights have intervened which it would be inequitable to disturb.* Re Pottasch Brothers Company, 2 Cir., 79 F.2d 613, 101 A.L.R. 1182, [30 A.B.R.,N.S., 225].

"This conclusion is not in conflict with International Agricultural Corp. v. Cary, supra [6 Cir., 240 F. 101], in which case the order involved had been entered by a predecessor referee, the estate closed and no action taken to vacate it until two years had expired.

"Appellant's objection to the order of sale was substantially a petition for rehearing on the two provisional orders and in our opinion, *no intervening rights appearing and diligence being shown,* the Conciliation Commissioner, upon the application, was authorized to, and should have granted a rehearing on the merits. * * *" (Italics supplied).

The Supreme Court of the United States recently divided on a question very much similar to the one raised by petitioner's application for reinstatement, in Union Joint Stock Land Bank of Detroit v. Byerly, 60 S.Ct. 773, 778, 84 L.Ed. 1041, 42 A.B.R.,N.S., 402. However, in both the majority and in the dissenting opinions, the Justices recognized that the intervening rights and equities of all parties concerned with the property should be given consideration and effect. Quoting from the dissenting opinion of Justices Black, Douglas and Murphy:

"Until disposition of the farmer's petition, he was entitled to the protection and benefit of the Act, and the bankruptcy court had exclusive jurisdiction of his property. Dismissal of the proceeding did not constitute its final disposition where reinstatement was available. Certainly, this must hold true at least for the period of time after dismissal during which the farmer had a statutory right to appeal from the District Court's action. Otherwise, even appeal might be wholly unavailing and futile. When a court of bankruptcy reinstates a case previously retired from the docket, as this farmer's case was reinstated, the court reconsiders the cause on the merits upon the original as well as any supplemental petitions unless rights have *'intervened which would render it inequitable to reconsider the merits.'* Wayne United Gas Company v. Owens [Illinois Glass] Co., 300 U.S. 131, 138, 57 S.Ct. 382, 386, 81 L.Ed. 557 [33 A.B.R., N.S., 1, 7]. *We find no intervening equities here.* [Italics supplied]. * * *

"So here, as in the Wayne case, State court proceedings subsequent to dismissal, but while further proceedings could be had in bankruptcy, did not divest the debtor of his property; there 'was no abuse of sound discretion in granting the motion (for reinstatement) and reconsidering the cause'; the district court in bankruptcy had 'the power, for good reason, to revise its judgments (of dismissal and to reinstate) upon seasonable application and before rights (had) vested on the faith of its action.' Id., 300 U.S. at page 137, 138, 57 S.Ct. [382] at page 385, 386, 81 L.Ed. 557 [33 A.B.R.,N.S., at pages 6 and 7]. And its general power to do so at least during the period allowed for taking an appeal, was reinforced by recognition of the specific statutory right of reinstatement, in the amended [section] 75, sub. s, which sprang into being only two days after dismissal of this farmer's petition. Paralleling the situation presented by the Wayne case, not only was the mortgagee-purchaser here a party to the 75 proceeding, but the State court itself may be said to have acted with knowledge that the dismissal—of which it was notified—did not necessarily represent the last step in the Federal court proceeding. Cf. Id., 300 U.S. at page 135, 57 S.Ct. [382] at page 384, 81 L.Ed. 557 [33 A.B.R.,N.S., at page 5].

"Here, the only asserted rights which intervened against this farmer-debtor were not those of a bona fide purchaser. The purchaser was the mortgagee who was a party to the Section 75 proceeding and who relied—at least in part—on an order of the bankruptcy court admittedly erroneous because contrary to the Frazier-Lemke Act, and rendered at the mortgagee's instigation. Therefore, the mortgagee-purchaser is not entitled to rely upon the status acquired by it in the State court after dismissal 'as precluding further consideration of the petition' for composition. Cf. Id., 300 U.S.

at page 135, 57 S.Ct. [382] at page 384, 81 L.Ed. 557 [33 A.B.R.,N.S., at page 5]."

An order dismissing the petition will be entered.